**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James William ATKINSON, a/k/a Walter
J. Atkinson, Defendant-Appellant.**

No. 71-1721
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Oct. 8, 1971.

Rehearing and Rehearing En Banc
Denied Nov. 15, 1971.

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409.

interstate commerce stolen United States Savings Bonds in the amount of 85,000 dollars, knowing the same to have been stolen, in violation of 18 U.S.C.A. § 2314 (1970). On appeal, he alleges three errors: (1) that the bonds themselves were produced as a result of an illegal search and seizure under the rule excluding the fruits of such conduct, and should not have been admitted into evidence; (2) that Atkinson's oral confession to an agent of the Federal Bureau of Investigation (FBI) was obtained in violation of Rule 5(a) of the Federal Rules of Criminal Procedure, making it, too, inadmissible; and (3) that the confession should not have been admitted in any event since the government violated the rule of Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967) by failing to produce all the police officers who were present at the time Atkinson confessed. The record is replete with contradictions and inconsistencies; however, construing the evidence in a light most favorable to the government [1] discloses that Atkinson's three alleged errors have no merit. We affirm his conviction.

Armistead, the state officer who initially arrested Atkinson, received word from an informant, on the evening of October 16, 1970, that a man who was "hot"—wanted in Texas or Oklahoma— was staying at a motel in Jackson, Mississippi and was spending a great deal of money there. Armistead went to that motel, discovered that the man in question (Atkinson) was registered under a fictitious name and address, and also learned that the man's car had an improper license tag attached to it. Armistead engaged Atkinson in conversation in the motel lounge during which Atkinson identified himself as Rudy Baron, a pilot for a movie studio. Armistead informed Atkinson that he was a Highway Patrolman and suggested that the two of them go to Atkinson's room in order to avoid causing an embarrassing

---

Harry L. Kelley, Jackson, Miss. (Court Appointed), for defendant-appellant.

Robert E. Hauberg, U. S. Atty., E. Donald Strange, Asst. U. S. Atty., Jackson, Miss., for plaintiff-appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Atkinson was convicted in his jury trial below of unlawfully transporting in

1. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

situation in the lounge. Atkinson agreed to the suggestion.

Shortly after the two were inside Atkinson's room, Armistead arrested Atkinson without a warrant on a charge of false pretenses,[2] and gave him at least a partial list of the required *Miranda* warnings. Armistead then took Atkinson to the Jackson Police Station, where the latter was booked, photographed, and fingerprinted. Atkinson was kept at the station for approximately thirty minutes, during which time several officers attempted to learn his identity in order to determine exactly where and for what he was wanted. They were unsuccessful. At this point, even though they felt they possessed adequate proof to hold Atkinson on the false pretenses charge, the police determined that since Atkinson had agreed to leave town, Armistead should return with him to the motel, and "if nothing turned up," Atkinson should be released.

Something did turn up. Back at the motel, Atkinson went to the office, paid his bill and *asked Armistead to come to the room* so that Armistead could see that he was leaving town. While in the room watching Atkinson pack, Armistead spotted a plastic bag sticking out from under a stack of dirty clothes, and saw the 5,000 dollar marking on a United States Savings Bond in the bag. When Armistead asked Atkinson about the contents of the plastic bag, Atkinson "spilled the beans". He took the bonds out of the bag, threw them on the bed, revealed his actual identity, and confessed to stealing the bonds in Texas and transporting them to Jackson. Aware of the federal criminal implications of the theft, Armistead then notified the FBI that Atkinson was being held and returned

him to the Jackson Police Station under the false pretense charge.

FBI Agent Martin, unaware of the bond theft, and knowing only that Atkinson was wanted on a flight from prosecution charge in Arizona, reached the jail at approximately 12:45 a. m. the morning of October 17. Atkinson refused to talk to Martin at that time, but told him to come back the next morning. At 9:55 a. m. Martin returned; before talking with Atkinson, Martin gave him a waiver of rights form which contained all the requisite *Miranda* warnings. Atkinson read it, signed it, and said he understood it. Thereafter Atkinson told Martin not only about the flight charge, but also again confessed to the bond theft.

At trial, appellant Atkinson timely objected to the admission of the bonds and to the admission of the confession given Martin. The district judge held preliminary hearings outside the presence of the jury and found the former not to have been illegally seized and the latter not to have been involuntarily offered. Upon the record before us, there is sufficient evidence to support both these findings.

## I. THE ADMISSIBILITY OF THE BONDS

In support of his claim that the bonds were admitted into evidence in violation of his Fourth Amendment rights, appellant advances two arguments. He contends first that there was no probable cause to arrest him, and hence the bonds were the fruits of that illegal arrest. He contends in the alternative that even if there were probable cause to arrest, the bonds were discovered during a warrantless search so removed in time from the arrest as not to be an incident thereof, and since the search did not fall into

2. Miss.Code Ann., 1942, § 2149 provides: Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valu-
able thing, upon conviction thereof, shall be punished by imprisonment in the penitentiary not exceeding three years, or in the county jail not exceeding one year, and by fine not exceeding three times the value of the money, property, or thing obtained.

any other exception excusing the need for a warrant, it was unreasonable. Both of these contentions are without merit.

■■ We note at the outset that we do not reach the question of whether the informant and his information were sufficiently reliable in themselves to meet the tests for probable cause. That information served only to direct attention toward Atkinson and to indicate his whereabouts. The requisite grounds of probable cause in this case find their basis in the first-hand knowledge of the arresting officer, Armistead, which he gained as a result of personal investigation. Armistead knew that Atkinson was registered under a fictitious name and address at a motel where he had run up a rather sizable bill; he also knew that defendant's car was improperly tagged. Considering that Atkinson had not yet paid the bill, the former facts were arguably sufficient to warrant a prudent man in believing that the crime of false pretenses, a felony in Mississippi, had been committed; moreover, and more importantly, Armistead's knowledge regarding the improper license tag was unquestionably sufficient to warrant his belief that Atkinson was guilty of committing a misdemeanor. Atkinson strongly urges that a conviction could not have been obtained on the false pretenses charge, and as that was the only offense with which he was charged by the Jackson Police, and the one for which he was told he was being arrested, that the arrest and everything resulting therefrom must be deemed fatally tainted. Atkinson's perspective on this issue is misplaced. We pause on his argument only long enough to say that the test for probable cause does not involve speculation about the outcome of a trial on the merits of a particular charge, but rather upon an assessment of whether the knowledge of the arresting officer at the time of the arrest would be sufficient to warrant a prudent man in believing that the person arrested had committed or was committing *an offense.* Beck v. State of Ohio, 379 U.S. 89, 85

S.Ct. 223, 13 L.Ed.2d 142 (1964); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). We need not decide whether this arrest would have been without probable cause had the facts within Armistead's personal knowledge at the time of arrest been only those supporting a belief that Atkinson had committed the offense of false pretenses, for here Armistead possessed conclusive evidence that Atkinson was committing a misdemeanor by operating his automobile with an improper tag. Atkinson has not challenged this fact.

■ That the officer elected to charge Atkinson with the more serious of the two crimes involved does not prevent the validity of the arrest from resting on the lesser crime. Mills v. Wainwright, 415 F.2d 787 (5th Cir. 1969). We said in *Mills* that "we want it well understood that when a crime under which the arrest is made and a crime for which probable cause exists are in some fashion related, then there is no question but that there is a valid arrest." Any other rule would force police officers to routinely charge every citizen taken into custody with every offense they thought he could be held for in order to increase the chances that at least one charge would survive the test for probable cause. Such a clogging of the criminal process already heavily encumbered, would be pointless. We thus decide that there was probable cause to arrest for the improperly displayed license tag, and we look no further.

■ This is not to say that this Court will indulge in *ex post facto* extrapolations of all crimes that might have been charged on a given set of facts at the moment of arrest, nor that we will look favorably upon arguments of the government doing the same. Such an exercise might permit an arrest that was a sham or fraud at the outset, really unrelated to the crime for which probable cause to arrest was actually present to be retroactively validated. This was the practice condemned in *Mills,* and we in nowise enervate that condemnation now. In this case, the undisputed

evidence shows that the police officer had at the time of the arrest marshaled facts sufficient in his professional judgment to charge Atkinson with two specific offenses; indeed, it was the fact that the misdemeanor of improper tagging had been committed that made it more likely that the felony of false pretenses had been, or was being committed.[3] At least where such a nexus is shown between the crime charged and the crime for which probable cause to arrest is present, the arrest clearly passes constitutional muster. As the Fourth Circuit observed in a similar case:[4]

> To make constitutional questions turn on the term chosen by police officers to describe their activity—officers who are accustomed to the vernacular of the police station and unschooled in the accepted constitutional vocabulary —is to engage in a futile and unwarranted exercise in semantics.

Failing in the above argument, Atkinson's alternative contention that the bonds were recovered in a warrantless unreasonable search of his room must be examined. The district judge rejected this contention and found that no search at all had occurred. After preliminary hearing on the matter, he found that Atkinson had invited Armistead to come into the motel room and that the officer then, "without making any kind of search, or investigation, or examination

other than his eyes seeing something sticking out from under some clothes that he [Atkinson] hadn't put in his baggage or luggage he [Armistead] saw this $5000 piece of security * * * I don't think there is any evidence at all of his violation of his constitutional rights by a search or seizure; there wasn't any search or seizure; there was a plain disclosure of the existence of the material that's involved in this suit."

The judge's conclusion is in accord with our decisions that items in plain view of law enforcement officers who have a legitimate right to be in a position to have that view are not discovered as a result of a search. Walker v. Beto, 437 F.2d 1018 (5th Cir. 1971); Agius v. United States, 413 F.2d 915, reh. denied 417 F.2d 635, cert. denied 397 U.S. 992, 90 S.Ct. 1116, 25 L.Ed. 2d 399 (5th Cir. 1969); Grimes v. United States, 405 F.2d 477 (5th Cir. 1968). We can find in the record before us no reason to upset his conclusion. We therefore need not reach the question of whether Atkinson consented to the search, since none occurred.

However, our agreement with the district judge does require us to test the officer's right to be in the motel room at the time he saw the bonds. After accepting the district judge's findings of fact at the preliminary hearing as not clearly erroneous,[5] we establish the

---

3. Miss.Code Ann., 1942, § 2470 provides:
   Arrests—when made without warrant.
   An officer or private person may arrest any person without warrant, for an indictable offense committed, or a breach of the peace threatened or attempted in his presence; or when a person has committed a felony, though not in his presence; or when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it; or on a charge, made upon reasonable cause, of the commission of a felony by the party proposed to be arrested. And in all cases of arrests without warrant, the person making such arrest must inform the accused of the object and cause of the arrest, except when he is in the actual commission of the offense, or is arrested on pursuit.

   Any law enforcement officer may arrest any person on a misdemeanor charge without having a warrant in his possession when a warrant is in fact outstanding for that person's arrest and the officer has knowledge through official channels that the warrant is outstanding for that person's arrest. In all such cases, the officer making the arrest must inform such person at the time of the arrest the object and cause therefor. If the person arrested so requests, the warrant shall be shown to him as soon as practicable.

4. Ralph v. Pepersack, 335 F.2d 128 (4th Cir. 1964).

5. United States v. Gunn, 428 F.2d 1057 (5th Cir. 1970).

officer's right on the following analysis. First, it is clear that Atkinson specifically requested that Armistead accompany him into the motel room. The evidence indicates he made the request in order to show the police officer his good faith intentions to leave town and to convince the officer that the charges outstanding should indeed be dropped. Had the officer not observed the bonds while in the room, Atkinson's ploy would have succeeded. Simply because it failed is not sufficient reason to vitiate the efficacy of his invitation nor invalidate the officer's right to accept it and enter the room. Atkinson must suffer the consequences of his own tactical error.

However, we think it necessary to push the proceedings back at least one step to examine whether Armistead had a right to be where he was when Atkinson asked him into the room; for if the officer had no such right at that point, the risk is great that the inherent coercive effect of officialdom's unauthorized presence caused Atkinson to make an offer he would not otherwise have made.

Armistead admitted during his testimony that the police suspected Atkinson of something more serious than the relatively minor offense with which he was initially charged; that they were detaining him in hopes of determining his identity; that they were "just trying to develop our case as we went along." He also testified that it was his purpose to release Atkinson "if nothing else turned up." This Court is well aware of the fact that police at times do arrest persons on one charge, primarily for the purpose of detaining them while building a case on another charge. We have held that such a technique does not cause the initial arrest, if otherwise legitimate, to become invalid, nor evidence resulting therefrom to be necessarily inadmissible. United States v. Seay, 432 F.2d 395 (5th Cir. 1970). In Seay, we said:

> The *subjective* intention of the city police to use Seay's arrest only to hold him until federal officers could bring charges against him under the laws of the United States does not negate the *objective* validity of the arrest. If a police officer who makes a valid arrest thinks his jurisdiction will not ultimately continue with the processing of the arrest of a person, that thought on his part does not cause the arrest to then become illegal nor the charges to become pretextural or phony. (emphasis in original)

However, we also said in *Seay* that "[w]hile the arresting officer may control the decision to arrest or refrain from arresting, he does not control the course of prosecution after arrest." Here that did not happen. Atkinson was still under arrest when Armistead returned him to the motel and he was not free to go. A citizen under arrest and being detained at a police station retains specifically defined constitutional rights which the courts have been diligent to safeguard. They should be no less diligent when that citizen is taken from the station-house, driven around in a car, and followed into his temporary abode.

The officer in this case was on a "fishing expedition," pure and simple; he was waiting and hoping for Atkinson to make some slip in word or deed and give himself away. Atkinson did just that. Though the decision to arrest is left within the unfettered discretion of the police officer, once that decision is made, if it be to arrest, other elements and other officials of our criminal process whose conduct is constitutionally circumscribed, come into play. Our decision should not be read as condoning police alteration of that process in a way that might lever the citizen into bargaining away his constitutional rights in hopes of getting his arrest withdrawn. Rather, we uphold the right of the police officer to accompany Atkinson back to the motel on the narrowest of grounds. Having decided not to proceed on the false pretenses charge, Armistead was merely returning Atkinson to the place where he was apprehended and was assuring himself, by waiting for him to pay the large bill he had run up, that the latter had indeed acquired nothing of value by means of registering under a

false name. Because it was at that precise point that Atkinson invited Armistead to the room, we affirm the decision that the officer eventually had a "plain view" of the bonds from a place where he had a right to be.

██ Had the circumstances been different or had Armistead's official status been otherwise pressed, we have grave doubts whether the discovery of the bonds would have been legitimate. By arresting a man, even with probable cause, the police do not thereby gain the right to follow him about in his daily life, waiting to get a "plain view" of his possessions. Freedom from such an intrusion is what the words of the Fourth Amendment clearly guarantee.

## II. THE ADMISSIBILITY OF THE CONFESSION

██ Atkinson's second alleged error is more easily dealt with. He would have us hold the confession made to FBI Agent Martin inadmissible because it was received at a time when "unnecessary delay" had occurred in bringing appellant before a United States Commissioner, in violation of Fed.R.Crim.P. 5(a). We have held in this Circuit many times that 5(a) is not applicable to one arrested on a state charge and in custody of state officers, unless the defendant can show unlawful collusion between the state and federal authorities in frustrating his right to prompt arraignment. United States v. Jackson, 448 F.2d 539 (5th Cir. 1971); Peters v. Rutledge, 397 F.2d 731 (5th Cir. 1968); Lovelace v. United States, 357 F.2d 306 (5th Cir. 1966). The burden of proving such a "working arrangement" between the state and federal authorities is on the defendant. Here we think Atkinson has not met that burden. The record shows that the FBI Agent did not learn Atkinson was being held until the evening of October 16; that the Agent was told by Atkinson late that night he would be willing to talk with him the next morning; that the Agent knew nothing about the bond theft until he returned that next morning (October 17); that Atkin-

son received the full *Miranda* warnings from the agent before giving any confession; and that the district judge held a full preliminary hearing in which he determined that confession to have been voluntary. These facts do not come close to demonstrating that any arrangement or collusion existed between the authorities sufficient to call 5(a) into play.

## III. THE *SIMS* PROBLEM

██ Atkinson's final point mistakenly relies on Sims v. Georgia, *supra*, in criticizing the government's failure to produce the testimony of all officers present at the time he gave his statement to FBI Agent Martin. We have this day rejected the identical contention in United States v. Hathorn, 451 F.2d 1337 (5th Cir. 1971).

The judgment and commitment of the district court is

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

In his petition for rehearing, Atkinson calls our attention to the case of Myers v. State, 158 Miss. 554, 130 So. 741 (Miss.1930). In that case, the Mississippi Supreme Court found that a police officer who saw an automobile having no license tag attached, standing unoccupied in a parking lot, did not, without more, have probable cause to arrest a person who voluntarily admitted having recently driven the automobile. The rationale of the decision was that all the elements of the misdemeanor for which the officer was making the arrest had not occurred in the officer's presence. The missing element was the actual operation of the automobile upon the highway.

██ Atkinson contends that since the officer who arrested him did not actually see Atkinson driving his improperly tagged automobile, that the *Myers* case must be read as saying that all the

elements of his misdemeanor charge were not present, and that his arrest was therefore illegal. Had Atkinson's automobile been seen without any license tag at all, we would be compelled by his argument. But that is not the case. Atkinson's misdemeanor charge was not that of operating upon the highway an automobile with no license tag, but rather that of being the owner or operator of an automobile which has affixed to it a tag issued to another vehicle. In the latter situation, the legislature of Mississippi has not required that the automobile be operated upon the highway. Once Atkinson was determined to be the one using the car, the mere fact that an improper tag was affixed completed the offense. A careful reading of the pertinent statute [1] is sufficient to convince us that the legislature has deliberately and specifically created as separate misdemeanors the offense of operating an automobile on the highway without a license and the offense of having a tag affixed to one's car which was issued for another vehicle.

Therefore, we adhere to our decision, and find that Officer Armistead possessed conclusive evidence that Atkinson had committed the misdemeanor of "hav(ing) affixed to * * * (his) vehicle a license tag issued to another vehicle," and consequently had probable cause to arrest him for this misdemeanor.

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

---

1. Miss.Code Ann. § 9352-51 (1942).

§ 9352-51. Violation of provisions of this act.—Any owner, operator, dealer, agent, or any other person who shall operate or cause to be operated upon the highways of this state, without having paid the privilege license tax or fee required by the provisions of this act, or without having the license tag affixed upon such vehicle as required by law, or who shall have affixed to such vehicle a license tag issued for another vehicle, or who shall alter or change any license tag issued in any way, or who shall violate any other provision of this act, shall be guilty of a misdemeanor and, upon conviction, shall be punished by a fine of not less than ten dollars ($10.00) and not more than one hundred dollars ($100.00), or by imprisonment in the county jail for not more than thirty (30) days, or by both such fine and imprisonment.