**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Sherman Vernon LYLES, Jr.,**
**Defendant-Appellant.**

No. 73–2944
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1974.

James O. Ford, Oxford, Miss. (Court-appointed), for defendant-appellant.

H. M. Ray, U. S. Atty., Alfred E. Moreton, III, William M. Dye, Jr., Oxford, Miss., for plaintiff-appellee.

Before THORNBERRY, GOLDBERG and RONEY, Circuit Judges.

THORNBERRY, Circuit Judge:

Again we are faced with that oft-recurring question: Did the police have probable cause to arrest the defendant? We agree with the district court that probable cause existed at the time of the arrest, and thus, we affirm.

A jury convicted appellant Lyles on four substantive counts of uttering forged postal money orders in violation of 18 U.S.C. § 500 and on one count of conspiring to utter forged postal money orders in violation of 18 U.S.C. § 2. On direct appeal, a panel of this Court remanded the case to the district court "with instructions to hold an evidentiary hearing, as if appellant were attacking his conviction collaterally under 28 U.S.C. § 2255," in order to determine whether probable cause for the arrest existed and whether fingerprints taken at the time of the arrest were admissible in evidence against the defendant. The panel found no merit in appellant's other contentions [1] and otherwise affirmed the

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

1. On direct appeal, appellant had contended that the trial judge (1) improperly denied appellant's motion for change of venue, (2) improperly denied his motion for production of documents, (3) improperly denied his motion to suppress fingerprint evidence without a hearing, (4) improperly admitted tainted identification evidence, (5) improperly denied his motion for a directed verdict of acquittal, and (6) erroneously instructed the jury. 471 F.2d at 1168.

convictions. United States v. Lyles, 5th Cir. 1972, 471 F.2d 1167.

On remand, the district judge found after an evidentiary hearing that there was probable cause for the arrest and that the fingerprints were thus admissible.[2]

Appellant's counsel has argued strenuously that the arresting officer has embellished his story since the first preliminary hearing in order to create a factual setting which justifies a finding of probable cause. We do not consider that proposition for we have concluded from the facts which are undisputed that a finding of probable cause was warranted.

On February 22, 1971, at about 3:30 in the afternoon, U.S. Postal Inspector Charles Brewer received a telephone call at his office in Jasper, Alabama, from the Assistant Postal Inspector in Chattanooga, Tennessee, informing him that several postal money orders, stolen from the Alton, Illinois Post Office, were being passed in Fulton, Mississippi that very day. Inspector Brewer left his office and arrived in Fulton a few minutes after 5:00 that afternoon. He talked with the Fulton Postmaster and a bank teller who had cashed one of the postal money orders reportedly stolen from the Alton Post Office.

About 6:00 that same evening, Inspector Brewer called Detective Roy Sandefer of the Tupelo, Mississippi Police Department and informed him that several $90.00 U.S. postal money orders, some of which made out to Edgar Harris and stolen from the Alton, Illinois Post Office in October 1970, had been cashed that afternoon in Fulton. Brewer also furnished Sandefer with a tentative description of two of the possible offenders by reference to an F.B.I. wanted bulletin of a black couple, Harry and Gail Truly,[3] and informed Sandefer that they were probably traveling in a 1962 to 1964 red, or red and white, Chevrolet. Detective Sandefer gave this information both to his fellow officers and to motel operators whom he thought might be visited by the suspects for overnight accommodations.

Shortly before midnight, James Vaughn, the proprietor of a motel in Tupelo, called Detective Sandefer and told him that a black man had offered a $90 money order issued to Edgar Harris in payment for a room, which Vaughn rejected, fearing that the money order might be stolen. Sandefer immediately drove to Vaughn's motel where he was given a full description of the black man who attempted to pass the money order, a description of two other blacks—a man and a woman—traveling with him in a 1962 to 1964 red Chevrolet convertible, and the money order which was retrieved from a waste paper basket after having been torn in half by the black who attempted to register. The descriptions were then passed on to all other Tupelo police units.

Ten minutes later, Detective Sandefer received a radio bulletin from Tupelo Patrolman Guy Harris who reported that he had observed a car answering the description parked at the Travel Lodge Motel. Sandefer drove to the motel, saw a black male fitting the description given by Vaughn registering at the desk and also saw a black man and woman sitting in a 1962 red Chevrolet convertible. Then and there Detective Sandefer placed the two persons in the car and the man at the desk under arrest.

We conclude that the information which Sandefer received from Brewer and Vaughn before the arrest gave the detective knowledge of facts and circum-

2. The district judge further held that even if the fingerprints were not admissible for any reason, the defendant waived his right to object by not doing so at the trial. On this appeal, appellant is alleging only that the requisite probable cause for the arrest was missing. And because of our disposition of that issue, we need not consider any question of waiver.

3. We note that the pictures of two of the defendants in the instant case taken at the time of arrest bear a remarkable resemblance to the pictures of the Truly couple on the F.B.I. wanted poster.

stances or reasonably trustworthy information that would lead a reasonably prudent person to believe that the suspected persons had committed or were committing an offense. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Sandefer knew before the arrest that postal money orders had been stolen, he knew they were made out in the sum of $90, he knew that some bore the name of Edgar Harris, he knew that at least two and possibly three blacks—two men and a woman—were involved, he knew that they were driving a 1962 to 1964 red, or red and white Chevrolet, he had a description of two of the suspects from an F.B.I. wanted bulletin, he had a full description of the suspects from a motel operator, he knew that a black man had attempted to pass one of the stolen money orders just ten minutes before he came upon the suspected vehicle and passengers at another motel, and he knew by his own eyes that the vehicle, its passengers, and the man registering at the desk fit the description given by Vaughn. Probable cause to arrest cannot require more than this.[4] The police cannot be faulted. The convictions are affirmed.

Affirmed.

---

4. We find that probable cause existed under both constitutional and Mississippi standards. See Miss.Code Ann. § 99–3–7 (1968); Norwood v. State, 258 So.2d 756, 760 (Miss. 1972); United States v. Atkinson, 5th Cir. 1971, 450 F.2d 835, 839; Lathers v. United States, 5th Cir. 1968, 396 F.2d 524. The time-honored principle that the legality of an arrest made by a state officer is to be determined according to state law, consistent with constitutional requirements, is still followed by most courts. Henderson v. United States, 5th Cir. 1968, 405 F.2d 874, cert. denied, 395 U.S. 906, 89 S.Ct. 1747, 23 L.Ed.2d 219; Crone v. United States, 5th Cir. 1969, 411 F.2d 251, cert. denied, Chontos v. United States, 396 U.S. 896, 90 S.Ct. 195, 24 L.Ed. 2d 173; United States v. Pearson, 5th Cir. 1971, 448 F.2d 1207; United States v. Atkinson, supra; United States v. Tramontana, 2nd Cir. 1972, 460 F.2d 464; United States v. Day, 3rd Cir. 1972, 455 F.2d 454; United States v. Gearhart, 4th Cir. 1964, 326 F.2d 412; United States v. Williams, 6th Cir. 1963, 314 F.2d 795; United States v. Woods, 7th Cir. 1970, 432 F.2d 1143, cert. denied, 1971, 401 U.S. 966, 91 S.Ct. 983, 28 L.Ed.2d 248; United States v. Bazinet, 8th Cir. 1972, 462 F.2d 982; United States v. Blum, 9th Cir. 1970, 432 F.2d 250; Garcia v. Baker, 10th Cir. 1970, 421 F.2d 671; 1 Wright, Federal Practice and Procedure § 77, at 123; 8 Moore's Federal Practice ¶ 4.02, at 4–10.

But cf. Lathers v. United States, supra; United States v. Miller, 10th Cir. 1971, 452 F.2d 731.

In applying this principle, the courts have generally not distinguished between federal habeas corpus cases, cases involving an arrest by state officers for a state offense, and cases involving an arrest by state officers for a federal offense. But there are some exceptions. See, e. g., Moll v. United States, 5th Cir. 1969, 413 F.2d 1233, 1236 n. 1; Paige v. Potts, 5th Cir. 1965, 354 F.2d 212, 214; Williams v. Adams, 2nd Cir. 1970, 436 F.2d 30, 32, reversed en banc, 1971, 441 F.2d 394, reversed, 1972, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612; Moss v. Cox, 311 F.Supp. 1245, 1250 (E.D.Va.1970); Lathers v. United States, supra.