United States Court of Appeals,

Fifth Circuit.

No. 94-10859

Summary Calendar.

Patricia Louise ELLERT, Plaintiff-Appellant,

v.

UNIVERSITY OF TEXAS, AT DALLAS, Defendant-Appellee.

May 18, 1995.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, DAVIS and DeMOSS, Circuit Judges.

POLITZ, Chief Judge:

Patricia Louise Ellert appeals an adverse judgment dismissing her sexual harassment suit against her former employer, the University of Texas at Dallas. Finding no error, we affirm.

*Background*

In December 1988 the University of Texas at Dallas hired Ellert as a secretary for its Dean of Graduate Studies. Her relationship with the Dean initially was quite amicable.

In August 1989, while having lunch with the Dean, Ellert claims that she felt compelled to drink a glass of wine and that on the return to their vehicle the Dean drew uncomfortably close to her while they were crossing the street. On the way back to the University, they stopped at the Dean's home and while they were conversing his wife entered the room. Ellert alleges that this made her uncomfortable. Subsequent to this uncomplained-of incident, the Dean neither touched Ellert again nor did he commit

1

any offensive act whatever; however, Ellert alleges that he was "overly friendly and charming."

In March 1990 Ellert entered the Dean's office unannounced and saw the Dean embracing a female assistant. Although neither the Dean nor Ellert ever spoke of this event, Ellert claims that his attitude toward her changed and that their relationship took a marked turn for the worse. She began receiving more frequent reprimands and in February 1991 she received a negative evaluation from the Dean and a warning that she was under observation for dismissal. On March 14, 1991 Ellert was terminated by the Dean, allegedly for failing to prepare properly materials needed by the Dean for presentation to his superiors. Ellert does not question the inadequacy in the preparation of the materials but claims that her error was blown out of proportion.

After satisfying administrative prerequisites, Ellert filed suit against the University, alleging that she had been discriminated against because of her refusal of the Dean's sexual advances and for her knowledge of his indiscretions with his assistant, all in violation of Title VII of the Civil Rights Act of 1964, as amended.[1]

The University moved for summary judgment, claiming, *inter alia,* that Ellert's claims based on actions occurring before March of 1990 were time-barred, and that the Dean's relationship with his assistant did not create a hostile work environment. Although Ellert conceded in her response that she was not making any claims

[1]42 U.S.C. § 2000e, *et seq.*

based upon the Dean's behavior during that time, she maintained that her claim was predicated not upon a hostile work environment theory but, rather, upon a *quid pro quo* sexual harassment theory. In support of this claim, Ellert alleged that her employment conditions were adversely affected when the Dean finally realized that she would be unreceptive to his repeated "subtle" advances after her discovery of his secret relationship with his assistant; alternatively, she argued that her conditions of employment were adversely affected solely because of her discovery of the indiscretion.

The district court granted the motion, citing Ellert's failure to show the existence of *quid pro quo* sexual harassment and finding that Ellert had not shown that she was subjected to any unwelcome sexual harassment. The court rejected her theory that the Dean's relationship with his assistant, when coupled with his "overly friendly" behavior somehow indicated that he was attempting to seduce her. Finally, the court rejected her claim that the repercussions following her inadvertent discovery constituted legitimate grounds for a claim of employment discrimination, concluding that, even assuming Ellert's discharge was due to this knowledge, this was a gender-neutral reason for termination outside the protective scope of Title VII. Ellert timely appealed.

*Analysis*

Ellert maintains that the district court erred in ruling that she failed to make a *quid pro quo* sexual harassment claim. A grant of summary judgment is reviewed *de novo* under the same standard as

3

that applied by the district court.[2]  Summary judgment is required when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

Title VII bars discrimination in employment "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex."[3] Any employer requiring sexual favors from an employee as a *quid pro quo* for bestowing job benefits upon that employee violates Title VII.[4]  In order to show that she was the subject of *quid pro quo* sexual harassment, Ellert must demonstrate:

—that she is a member of a protected group;

—that she was subject to unwelcome sexual harassment;

—that the complained-of harassment was based upon sex;

—that her reaction to the harassment affected tangible aspects of the terms and conditions of her employment, with her acceptance or rejection of the harassment being either an express or implied condition to receipt of a benefit to or the cause of a tangible adverse effect on the terms or conditions of her employment;  and, finally,

—*respondeat superior.*[5]

The ultimate issue in considering a summary judgment motion

---

[2]*Lindsey v. Prive Corp.,* 987 F.2d 324 (5th Cir.1993).

[3]42 U.S.C. § 2000e-2(a)(1).

[4]*Jones v. Flagship International,* 793 F.2d 714 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987).

[5]*Collins v. Baptist Memorial Geriatric Center,* 937 F.2d 190 (5th Cir.1991), *cert. denied,* 502 U.S. 1072, 112 S.Ct. 968, 117 L.Ed.2d 133 (1992).

4

in a case of this type is whether the evidence of unlawful discrimination, or lack thereof, is so compelling that the moving party should prevail as a matter of law.[6]   In evaluating the propriety of summary judgment on Ellert's discrimination claim, "the question before us is whether the evidence in the summary judgment record establishes, as a matter of law, that [Ellert] was not the victim of discrimination by [her] employer."[7]

The evidence, when viewed in the light most favorable to Ellert, fails to establish any sexual harassment by the Dean that is not time-barred.[8]   After the August 1989 incident he did not discuss sexual matters, cause any physical contact, or make any threats or promises related to her rejection or acceptance of his affections.   Further, the gravamen of Ellert's claim is that her association with the Dean changed as a result of her discovery of his relationship with his assistant and not as a result of rejection of his advances.   The summary judgment evidence of the claimed unlawful discrimination toward Ellert via her claim of *quid pro quo* sexual harassment does not pass muster and the dismissal of her Title VII claim was appropriate.

---

[6]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[7]*Armstrong v. City of Dallas,* 997 F.2d 62, 66 (5th Cir.1993).

[8]The one incident involving arguably sexual advances by the Dean is clearly time-barred.  42 U.S.C. § 2000e-5(d) requires that in order to preserve a claim, a plaintiff must file a complaint with the EEOC within 180 days of the allegedly discriminatory employment action.  As Ellert failed to file her complaint until September 1991, any claim relating to the August 1989 incident, if it had any validity, has prescribed.

Ellert, however, insists that she personally does not have to be the subject of unwelcome *quid pro quo* sexual harassment in order to recover under Title VII, claiming that she need only link her discharge to the Dean's unwelcome sexual harassment of his assistant. She contends that she has set forth an actionable Title VII claim by showing that the harassment gave rise to conditions that led to his decision to terminate her, specifically her discovery of the harassment of the assistant.

Ellert invites our attention to authority for the proposition that a Title VII claim can be based upon a supervisor's voluntary sexual relations with a subordinate.[9] This proposition has not been widely accepted.[10] Most circuits refuse to extend Title VII to employment decisions that are not directly related to impermissible gender-based distinctions.[11] In those cases in which

---

[9]29 C.F.R. § 1604.11(g) provides that

> [w]here employment opportunities or benefits are granted because of an individual's submission to the employer's sexual advances or requests for sexual favors, the employer may be held liable for unlawful sex discrimination against other persons who were qualified for but denied that employment opportunity or benefit.

[10]*See DeCintio v. Westchester County Medical Center,* 807 F.2d 304, 306-307 (2d Cir.1986), *cert. denied,* 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987) ("The proscribed differentiation under Title VII ... must be a distinction based on a person's sex, not on his or her sexual affiliations."); *Candelore v. Clark County Sanitation District,* 752 F.Supp. 956, 960 (D.Nev.1990), *aff'd,* 975 F.2d 588 (9th Cir.1992) ("[P]referential treatment of a paramour, while perhaps unfair, is not discrimination on the basis of sex in violation of Title VII....").

[11]*See Smith v. Liberty Mutual Ins. Co.,* 569 F.2d 325 (5th Cir.1978); *Ulane v. Eastern Airlines,* 742 F.2d 1081 (7th

Title VII was extended to allow recovery based upon a supervisor's voluntary sexual relationship with a subordinate, the claims usually were premised upon the paramour receiving some form of preferential treatment over the claimant.[12]

In the instant case, however, Ellert does not allege that the assistant received preferential treatment over her because of the existence of a sexual relationship with the Dean; rather, she asserts that she was discharged because of her knowledge of what she alone characterizes as an illegal and unwelcome relationship. Even if her knowledge of the affair was the true *animus* behind the discharge decision, it was a motivation that did not rely upon her gender and, as such, it was not within the ambit of Title VII's protections.

Accordingly, the judgment of the district court is AFFIRMED.

---

Cir.1984), *cert. denied,* 471 U.S. 1017, 105 S.Ct. 2023, 85 L.Ed.2d 304 (1985); *Sommers v. Budget Marketing, Inc.,* 667 F.2d 748 (8th Cir.1982); *DeSantis v. Pacific Telephone & Telegraph Co.,* 608 F.2d 327 (9th Cir.1979).

[12]*See King v. Palmer,* 778 F.2d 878 (D.C.Cir.1985) (implicit recognition of Title VII action alleging discrimination due to favored treatment of paramour); *Toscano v. Nimmo,* 570 F.Supp. 1197 (D.Del.1983) (supervisor's grant of promotion to lover over plaintiff sufficient to predicate liability under Title VII).