IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-30312
_____

Michael Wayne Vance,

Plaintiff-Appellee,

v.

R. Nunnery, Individually &
        in his official capacity,
        et al.,

Defendants,

R. Nunnery, Individually &
        in his official capacity,

Defendant-Appellant.


_____

Appeals from the United States District Court
for the Western District of Louisiana
_____
March 16, 1998

Before WIENER, EMILIO M. GARZA, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

The plaintiff, Michael W. Vance, brought suit under Section 1983 against Detective R. Nunnery for the alleged violation of his Fourth Amendment rights. Vance claimed that Nunnery possessed conclusive proof of his innocence for a burglary occurring on April 5, 1995, but nevertheless arrested him for that crime. After discovery, Nunnery moved for summary judgment on the basis of qualified immunity. The district court denied this motion. On interlocutory appeal, Nunnery concedes that he lacked even arguable probable cause to arrest Vance for the April 5th burglary, but nonetheless asserts that he is entitled to qualified immunity because at the time of the arrest, he had at least arguable probable cause to arrest Vance for a "related offense." We conclude that the related offense doctrine does not apply in this case, and that even if it did, Nunnery lacked arguable probable cause to arrest Vance for the purportedly related and uncharged offense.

Accordingly, we affirm the district court's denial of Nunnery's motion for summary judgment.

I.

The district court's denial of Nunnery's motion for summary judgment on qualified immunity grounds is reviewed *de novo* under the same standards applied below. *Ellert v. University of Texas*, 52 F.3d 543, 545 (5th Cir. 1995). "Summary judgment is required when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* Consequently, we set forth the facts in the light most favorable to Vance.

In early April 1995, Nunnery, a detective in the Bossier City Police Department, began investigating a reported burglary at Alpha Storage on April 5th or 6th. According to the initial police report, several items were taken from storage, including a desk, chair, nightstand, microwave, stereo, and table.

On April 11, 1995, Nunnery conducted a taped interview with Thea Winters. In that interview, Winters claimed that Vance once told her that he had rented a U-Haul truck in his name, used it to remove items from Alpha Storage, and then pawned the goods at the River City Pawn Shop. She did not, however, indicate when her conversation with Vance took place, when Vance visited Alpha Storage, or whether Vance had the assistance of an accomplice.

On April 12, 1995, Nunnery interviewed Roberta Hill, a former Alpha Storage employee. In her taped statement, Hill made a vague reference to the possibility of burglaries at Alpha Storage occurring sometime before April 5th. She did not, however, know precisely when they had occurred, or what, other than perhaps some televisions, had been stolen. Hill also informed Nunnery that one month earlier, she had driven Vance and Willie Chism from a U-Haul rental office to Chism's mother's house. According to Hill, Vance stated that he had rented a U-Haul truck that day to move his friend, Chism. Hill did not, however, implicate Vance in any burglary at Alpha Storage, let alone one occurring at the time of this U-Haul rental.

On April 19, 1995, Nunnery interviewed Willie Chism. During the course of this recorded

2

interview, Chism stated that he and Vance had used a U-Haul truck to take two televisions and two microwaves from the Alpha Storage facility on April 5, 1995. He claimed that Roberta Hill had given Vance permission to remove these items, and that he and Vance did not take all the items listed as missing in the initial police report regarding the April 5th burglary. Chism did not, however, mention seeing Hill, or needing a ride from her, at any time after he and Vance allegedly left Alpha Storage. Nunnery, moreover, failed to ask Chism whether the events he described might have occurred in March instead of April.

Nunnery did, however, attempt to corroborate partially the testimony of Winters and Hill. With respect to Winters, Nunnery was unable to bolster her testimony because there was no record of Vance having pawned any of the missing items at the River City Pawn Shop. With respect to Hill, Nunnery failed to verify her vague reference to earlier burglaries at Alpha Storage: He never determined whether or when any items, other than those listed in the initial police report regarding the April 5th burglary, had been taken from Alpha Storage. Nunnery did, however, obtain a U-Haul receipt signed by Vance. Although the receipt is illegible and thus does not indicate a March 10th rental date, Nunnery claims that Ms. Girshman, a U-Haul employee, examined the receipt and stated that the truck was rented to Vance on March 10, 1995. This statement by Ms. Girshman, however, was not recorded and was not mentioned in Nunnery's investigation notes.

Based on the foregoing investigation, Nunnery obtained an arrest warrant for Vance on May 8, 1995. In his probable cause affidavit, Nunnery asserted that Vance was responsible for a burglary occurring at Alpha Storage "on or about the 5th day of April, A.D., 1995." The affidavit did not mention any earlier burglaries at Alpha Storage. Similarly, the arrest warrant charged Vance with the "simple burglary" of Alpha Storage "on or about the fifth day of April A.D., 1995." Thus, a judge never determined that there was probable cause to arrest Vance for a burglary at Alpha Storage other than the one that occurred on April 5th.

After obtaining the arrest warrant, Nunnery learned that Vance was residing at the Shreveport Rescue Mission, a secured drug rehabilitation center. On June 16, 1995, Nunnery took Vance from

3

the mission to the Bossier police station for an interview. At the station, Nunnery questioned Vance about the April 5th burglary only, for which Vance provided an alibi. Vance claimed, and Nunnery immediately confirmed, that Vance had been residing at the Shreveport Rescue Mission from March 12th through the time of the April burglary. During the questioning, Hill arrived at the station and identified Vance as the person she had described in her April 12th statement. According to Nunnery, she also reiterated her still-unsubstantiated claim that there had been a "series" of earlier "break ins" at Alpha Storage.[1] Nunnery then arrested Vance notwithstanding his alibi for the April 5th burglary. In his arrest report, Nunnery noted that Vance had been "arrested on" the warrant charging him with the simple burglary of Alpha Storage on or about April 5th.

Two weeks later, the charges were dropped and Vance was released. Vance then brought suit against Nunnery and the police department under Section 1983, alleging that he was arrested in violation of the Fourth Amendment. Nunnery has conceded that the arrest, when viewed as an arrest for the April 5th burglary of Alpha Storage, was unconstitutional because he possessed conclusive evidence of Vance's innocence at the time of the arrest. *Cf. Sanders v. English*, 950 F.2d 1152, 1162 (5th Cir. 1992) (failing to release a person arrested on the basis of a valid warrant after learning of his innocence is a constitutional violation); *Gay v. Wall*, 761 F.2d 175, 178-79 (4th Cir. 1985) (same). In other words, notwithstanding the existence of the arrest warrant, Nunnery lacked probable cause at the time he arrested Vance. *Cf. Franks v. Delaware*, 438 U.S. 154 (1978) (identifying another circumstance where the existence of a warrant will not preclude an arrestee from demonstrating that the arrest was nevertheless unconstitutional because it was not supported by probable cause). Nonetheless, in his motion for summary judgment, Nunnery argued that he was entitled to qualified immunity, not because he met the constitutional requirements for arresting Vance for the April 5th burglary, but because he had arguable probable cause to arrest Vance for a "related offense"—a burglary that he believed occurred at Alpha Storage on March 10th. The district court

---

[1] Unlike her previous statement, however, this one was not recorded.

4

denied this motion because the "parties each submit[ted] different versions of the few relevant facts [and] a case in such a posture is not properly disposed of by summary judgment."

This Court has jurisdiction over Nunnery's interlocutory appeal under 28 U.S.C. § 1291 as interpreted by the Supreme Court in *Behrens v. Pelletier*, 116 S. Ct. 834 (1996), *Johnson v. Jones*, 115 S. Ct. 2151 (1995), and *Mitchell v. Forsyth*, 472 U.S. 511 (1985). Taken together, these decisions demonstrate that although a public official asserting a qualified immunity defense may not seek interlocutory appellate review of a district court's evidence sufficiency determination, he or she may nevertheless argue on appeal that the facts, even when viewed in the plaintiff's favor, demonstrate that the plaintiff's constitutional rights were not violated or that the defendant's conduct was objectively reasonable in light of clearly established law. *See Naylor v. Louisiana*, 123 F.3d 855, 857 (5th Cir. 1997); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 531 (5th Cir. 1997). Thus, Nunnery's contention—that the facts, when viewed in the light most favorable to Vance, show that Nunnery's conduct was objectively reasonable—is one over which this court has interlocutory jurisdiction.[2]

## II.

Nunnery argues that he intended to arrest Vance on June 16th, not for the April 5th burglary, but for the March 10th burglary of Alpha Storage. He further contends that these two burglaries constituted "related offenses" and that his arrest of Vance, when viewed as an arrest for the March 10th burglary of Alpha Storage, was, at a minimum, supported by arguable probable cause. Nunnery thus concludes that even when the facts are viewed in Vance's favor, they nonetheless show that he is entitled to qualified immunity.

In this circuit, a police officer may not obtain qualified immunity for an unconstitutional warrantless arrest by claiming that he could have arrested the plaintiff for another offense unless two conditions are satisfied. First, the charged and uncharged offenses must be "related." Second, the

---

[2] Insofar as the parties disagree on the facts, these disputes have been resolved in Vance's favor for the purposes of this interlocutory appeal.

arresting officer must demonstrate that there was arguable probable cause to arrest the plaintiff for the uncharged related offense. *See, e.g.*, *Pfannstiel v. City of Marion*, 918 F.2d 1178 (5th Cir. 1990); *Gassner v. City of Garland*, 864 F.2d 394 (5th Cir. 1989); *Trejo v. Perez*, 693 F.2d 482 (5th Cir. 1982); *cf. United States v. Atkinson*, 450 F.2d 835 (5th Cir. 1971) (applying the related offense doctrine to salvage the legality of an arrest in a criminal proceeding).

To date, this court has identified only two settings in which a police officer may invoke the related offense doctrine in order to obtain qualified immunity for effecting a warrantless arrest and charging a person with an offense that was not supported by arguable probable cause. First, in cases where the arresting officer has made such an arrest based on conduct occurring in his presence, he is entitled to qualified immunity so long as the charged and uncharged offense, for which there was arguable probable cause, each arose or stemmed from the observed conduct. *See, e.g.*, *Pfannstiel*, 918 F.2d at 1180 (holding that although the police officers may have improperly arrested Pfannstiel for trespassing after he loudly and abusively questioned their authority, they were entitled to qualified immunity because Pfannstiel's loud and abusive conduct provided them with arguable probable cause to arrest him for disorderly conduct); *Gassner*, 864 F.2d at 396-400 (holding that the police officer was entitled to qualified immunity because he had arguable probable cause to arrest Gassner for disobeying the order of a police officer enforcing the traffic laws even though the district court found that there was not arguable probable cause to arrest Gassner for the charged offense of disorderly conduct); *Trejo v. Perez*, 693 F.2d at 485 (finding that although the police officer lacked probable cause to arrest the plaintiff for disorderly conduct for using vulgar language in response to a request for identification, he was entitled to raise the defense that he had arguable probable cause to arrest the plaintiff for the related offense of failing to furnish the requested identification). Second, in cases where the arresting officer has made such an arrest based on her "first-hand knowledge" of evidence "gained as the result of personal investigation," she is entitled to qualified immunity so long as the evidence providing arguable probable cause to make an arrest for the uncharged offense also suggested that the charged offense had been committed. *See Atkinson*, 450 F.2d at 838-39.

6

The facts of this case, however, do not place Nunnery in either category. Unlike every police officer who has successfully invoked the related offense doctrine, Nunnery did not make a warrantless arrest. Instead, he arrested Vance on the basis of an arrest warrant that he knew was no longer supported by probable or arguable probable cause. Moreover, because the charged offense—the April 5th burglary of Alpha Storage—and the offense invoked to justify a finding of qualified immunity—the alleged March 10th burglary of Alpha Storage—occurred outside Nunnery's presence on different dates, they are not properly related within the meaning of the line of cases exemplified by *Gassner*: A simple burglary occurring on April 5th, cannot at the same time also constitute a simple burglary on March 10th. Further, although he conducted a personal investigation, Nunnery may not rely on our decision in *Atkinson*. Unlike the police officer in *Atkinson*, who corroborated the critical components of an informant's tip, *Atkinson*, 450 F.2d at 838, Nunnery lacked "first-hand knowledge" of much of the evidence allegedly connecting Vance to the charged and uncharged offenses because he failed to corroborate several critical witness statements, including Hill's testimony that a burglary had taken place at Alpha Storage in early March. *See infra*. More importantly, unlike the evidence relating to the uncharged offense in *Atkinson*, which made it more likely that the [charged offense] had been, or was being committed," *id.* at 839, the evidence that Nunnery collected and relied on to connect Vance to the alleged March 10th burglary not only failed to point to Vance's involvement in the April 5th burglary, it actually excluded the possibility that Vance had committed both the charged and uncharged offense.

Nunnery, moreover, may not seek refuge in the decisions of our sister circuits. He has not identified, and we have not found, a court of appeals decision applying the related offense doctrine in a manner broad enough to cover the facts of this case. Instead, the other federal circuits have allowed police officers to invoke this doctrine under circumstances similar to those in *Pfannstiel*, *Gassner*, and *Trejo*. *See, e.g.*, *Avery v. King*, 110 F.3d 12, 14-15 (6th Cir. 1997) (noting that the defendant police officer lacked probable cause to arrest the plaintiff for the charged offense of forcibly impeding a police officer, but nonetheless awarding the defendant qualified immunity because the

7

plaintiff's conduct provided him with probable cause to make a warrantless arrest for the related and uncharged offense of willfully obstructing a police officer); *Gasho v. United States*, 39 F.3d 1420, 1428 n.6 (9th Cir. 1994) ("Probable cause may still exist for a closely related offense, even if that offense was not invoked by the arresting officer, as long as it involves the same conduct for which the suspect was arrested."); *Biddle v. Martin*, 992 F.2d 673, 676-77 (7th Cir. 1993) (noting that the doctrine has been applied in cases where a police officer lacked probable cause to make a warrantless arrest for charged offense based on conduct occurring in his presence but nevertheless possessed arguable or actual probable cause to make a warrantless arrest for an uncharged offense arising from this same conduct).

Although he recognizes that the application of the related offense doctrine in this case would constitute a substantial departure from the settled practice of this and other circuits, Nunnery notes that the definition of "related" has been left "for case law development." *Trejo*, 693 F.2d at 486. Accordingly, he urges us to conclude that if his investigation created arguable probable cause to arrest Vance for any crime, then this uncharged offense is necessarily related to the offense with which Vance was charged. We decline Nunnery's invitation to expand dramatically the reach of the related offense doctrine to encompass the facts of this case.

The decisions of this court and the other courts of appeals applying the related offense doctrine represent a carefully constructed "compromise" between two competing concerns. The first, that police officers making warrantless arrests should not be forced "'to routinely charge every citizen taken into custody with every offense that they thought he could be held for in order to increase the chances that at least one charge would survive the test for probable cause.'" *Trejo*, 693 F.2d at 485 (quoting *Atkinson*, 450 F.2d at 838). The second, that police officers should not be allowed "to justify what from the outset may have been actually sham or fraudulent arrests on the basis of ex post facto justifications that turn out to be valid." *Gassner*, 864 F.2d at 398. By limiting the availability of the related offense doctrine to cases like *Gassner* and *Atkinson*, the federal courts have both grasped the realities of modern law enforcement and protected our Fourth Amendment freedoms.

8

To allow Nunnery to invoke the related offense doctrine in this case, however, would unjustifiably tilt this balance in favor of qualified immunity. In part, this is because Nunnery, unlike those raising a related offense defense before him, made his arrest on the basis of a warrant. A police officer who obtains an arrest warrant and then intentionally arrests someone he knows to be innocent should not benefit from a doctrine designed to protect police officers from civil liability for reasonable mistakes in judgment made when they effect warrantless arrests for conduct they believe is criminal based on their observations or "first-hand knowledge."[3] More importantly, there is circumstantial evidence in the record that Nunnery may be "indulg[ing] in [an] ex post facto extrapolation[] of all crimes that might have been charged on a given set of facts at the moment of arrest," which is an exercise that this court does not "look favorably upon." *Atkinson*, 450 F.2d at 838. For example, notwithstanding the fact that Nunnery was aware of some evidence purportedly connecting Vance to an alleged March 10th burglary at the time he interviewed Chism, he never asked Chism whether the events he described might have occurred in March rather than April. Moreover, both the probable cause affidavit and the arrest warrant failed to mention the possibility of a March 10th burglary. Further, the only evidence that Vance rented a U-Haul on March 10th is a statement by a U-Haul employee to Nunnery, which Nunnery failed to document in his investigation report. Finally, Nunnery failed to verify Hill's vague reference to a prior burglary at Alpha Storage before arresting Vance. In sum, to apply the related offense doctrine in these circumstances would unduly expand the practical foundation of the police protections built into this doctrine and could unduly narrow the scope of the Fourth Amendment's protection against sham arrests.

In light of these concerns, we decline to depart from our settled practice and substantially

---

[3] We also note that because a police officer who makes an arrest on the basis of a facially valid arrest warrant will in most cases be entitled to qualified immunity, *see, e.g.*, *Hamill v. Wright*, 870 F.2d 1032 (5th Cir. 1989); *cf. Velardi v. Walsh*, 40 F.3d 569, 573 (2d Cir. 1994) (stating that when an arresting "officer knows, or has reason to know, that he has materially misled a magistrate on the basis for a finding of probable cause, . . . the shield of immunity [afforded by a warrant] is lost"), the invocation of the related offense doctrine will almost always be unnecessary under these circumstances.

broaden the related offense doctrine to encompass the facts of this case. We therefore hold that Nunnery is not entitled to qualified immunity for his unconstitutional arrest of Vance because the uncharged offense for which he claims to have had arguable probable cause was not properly related to the charged offense for which he lacked probable cause. Although there may be cases where the definition of a related offense should be expanded beyond its current boundaries in order to provide a police officer with qualified immunity, this is not one of them.

We also note that even if the alleged March 10th and April 5th burglaries were properly related, Nunnery would not be entitled to qualified immunity. This is because the facts, when viewed in the light most favorable to Vance, demonstrate that Nunnery lacked arguable probable cause to arrest him for the March 10th burglary. *See Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (noting that qualified immunity will attach upon a finding of arguable probable cause).

The existence of probable cause is not determined by reference to a precise formula. Instead, probable cause is present "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996). Thus, if a reasonable police officer standing in Nunnery's shoes at the time he arrested Vance could have believed that there was probable cause to arrest Vance for the March 10th burglary of Alpha Storage, then Nunnery would be entitled to qualified immunity. *See Gassner*, 864 F.2d at 398.

A reasonable officer, however, could not conclude that there was probable cause to arrest Vance for a March 10th burglary at Alpha Storage based on Nunnery's investigation. This investigation revealed that, according to Hill, Vance used a U-Haul truck on or near this date to help move Chism. Nunnery was also aware of Winters's claim that Vance told her he had used a U-Haul to remove items from Alpha Storage, although she did not relate the dates of her conversation with Vance nor his trip to Alpha Storage. In fact, Winters's testimony failed to connect Vance to a burglary on March 10th because Nunnery's investigation did not produce evidence that Vance had pawned any goods at the Riverside Pawn Shop near this date. Chism's testimony likewise failed to

10

connect Vance to a March 10th burglary, although it did implicate him in a possible burglary on April 5th at Alpha Storage involving a U-Haul truck. Nunnery, however, failed to ask Chism whether the events he described as taking place on April 5th might actually have occurred on or about March 10th. Further, because Chism's description of the events immediately following the removal of items from Alpha Storage did not match Hill's description of the events surrounding Vance's U-Haul rental in March, Chism's statement did not even provide Nunnery with a basis for inferring that the events he related took place on March 10th.

Notwithstanding the shortcomings in the Hill and Chism testimony, had there been evidence of a burglary at Alpha Storage on March 10th, we would be faced with the close question of whether Nunnery had arguable probable cause to arrest Vance based on the preliminary results of his investigation. But there was no evidence that a burglary or any other crime actually occurred at Alpha Storage on March 10th. Hill's vague reference to earlier "break ins" at Alpha Storage would not support a reasonable belief in the existence of a burglary on that date, for she did not state with any specificity when these alleged burglaries had occurred, who had been robbed, and what had been taken. In addition, Nunnery failed to investigate the existence of these burglaries and thus did not know, at the time he arrested Vance, whether and when anything had been stolen from Alpha Storage in March. The exact date of these alleged burglaries, however, is a critical component of Nunnery's arguable probable cause claim, for Vance began staying at the Shreveport Rescue Mission on March 12th. Faced with this lack of crucial information, a reasonable officer standing in Nunnery's shoes at the time of Vance's arrest would have been suspicious of Vance but could not have reasonably concluded that there was probable cause to arrest him for a March 10th burglary. Rather than making an arrest, a reasonable officer would have continued his investigation. Nunnery, therefore, is not entitled to qualified immunity on the grounds that he had arguable probable cause to arrest Vance for the offense of a March 10th burglary at Alpha Storage.

## III.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

11