329 F.3d 723
 Howard L. BINGHAM, Plaintiff-Appellee,
v.
CITY OF MANHATTAN BEACH; Ernest Klevesahl, Jr.; Hodgen Crossett; Does, 1-10, inclusive, Defendants, and
Robert Schreiber, Defendant-Appellant.
Howard L. Bingham, Plaintiff-Appellant,
v.
City of Manhattan Beach; Ernest Klevesahl, Jr., Defendants, and
Robert Schreiber; Hodgen Crossett, Defendants-Appellees.
 No. 01-56044.
 No. 01-56086.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted August 7, 2002.
 Filed May 19, 2003.
 
 COPYRIGHT MATERIAL OMITTED David D. Lawrence, Franscell, Strickland, Roberts & Lawrence, Pasadena, CA, for the defendant-appellant-cross-appellee.
 Howard R. Price, Brodey & Price, Beverly Hills, CA, for the plaintiff-appellee-cross-appellant.
 Appeal from the United States District Court for the Central District of California; Margaret M. Morrow, District Judge, Presiding. D.C. No. CV 00-6882 MMM.
 Before: REINHARDT, TROTT, and TASHIMA, Circuit Judges.
 Opinion by Judge TASHIMA; Partial Concurrence and Partial Dissent by Judge REINHARDT.
 OPINION
 TASHIMA, Circuit Judge.
 
 
 1
 Howard Bingham was pulled over by Manhattan Beach Police Officer Robert Schreiber in the early morning hours of October 4, 1999. Schreiber alleges that Bingham was driving erratically. After Bingham showed Schreiber an expired driver's license, and a check of that license found an outstanding warrant for an individual with similar identifying information, Schreiber arrested Bingham and brought him to the police station, where he was held for several hours. Bingham filed this action under 42 U.S.C. § 1983, contesting both the traffic stop and the arrest. Schreiber sought summary judgment on qualified immunity grounds. The district court denied the motion as to the traffic stop, but granted it as to the arrest. Schreiber appeals the denial of the motion and Bingham cross-appeals the grant. We affirm the district court.
 
 JURISDICTION
 
 2
 Although the denial of a summary judgment motion ordinarily is not appealable, we have jurisdiction over an interlocutory appeal when the ground for the motion is qualified immunity. Jeffers v. Gomez, 267 F.3d 895, 903 (9th Cir.2001) (per curiam); Schwenk v. Hartford, 204 F.3d 1187, 1195 (9th Cir.2000). Our jurisdiction generally is limited to issues of law; it "does not extend to claims in which the determination of qualified immunity depends on disputed issues of material fact." Jeffers, 267 F.3d at 903. Where the facts are disputed, however, we assume that the version of the facts asserted by the non-moving party is correct in determining whether the denial of qualified immunity was appropriate. Id.; see Behrens v. Pelletier, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (holding the denial of summary judgment appealable where the denial "necessarily determined that certain conduct attributed to petitioner (which was controverted) constituted a violation of clearly established law"). We have jurisdiction over Bingham's cross-appeal of the grant of summary judgment with respect to the arrest pursuant to 28 U.S.C. § 1291 because the district court certified its order granting summary judgment as to the arrest under Federal Rule of Civil Procedure 54(b).[1]
 
 BACKGROUND
 
 3
 On October 4, 1999, at approximately 12:30 a.m., Bingham was driving southbound on Sepulveda Boulevard in the City of Manhattan Beach, California. A few blocks after he crossed Rosecrans Avenue, he was pulled over by Schreiber. Bingham is a 62-year-old African-American photographer whose work has appeared in major magazines, including Time, Newsweek, Sports Illustrated, and Life. Prior to the incident at issue, he had no criminal record.
 
 
 4
 The events preceding and during the traffic stop are disputed. Bingham contends that he was driving in a safe and lawful manner at all times on the evening in question. He states that shortly after he crossed Rosecrans Avenue, Schreiber, who is white, began to follow him in a patrol car. Schreiber followed Bingham from the 3400 block to the 1500 block of Sepulveda, at which time he turned on his overhead lights and directed Bingham to pull over. Bingham came to a stop at the 1200 block of Sepulveda. It is disputed whether Schreiber could see Bingham (and, consequently, whether he knew Bingham's race) before he pulled him over.
 
 
 5
 Schreiber alleges that Bingham was driving erratically; specifically, he testified that Bingham's car was drifting between lanes on Sepulveda and that he suspected that Bingham was intoxicated. Schreiber approached Bingham's car, where he "immediately" determined that Bingham was not intoxicated. Schreiber asked Bingham for his driver's license, and Bingham complied with the request. Bingham asked Schreiber why the officer had pulled him over, and Schreiber replied that Bingham had been driving over the lane line.
 
 
 6
 The driver's license that Bingham gave to Schreiber had expired on May 29, 1999, approximately four months earlier. Schreiber noticed this fact, returned to his police car, and ran a check on Bingham's identifying information in the mobile computer in the patrol car. The computer informed Schreiber that a "no-bail felony warrant" was outstanding for a person named Andre Bingham. It further informed him that: (1) Andre Bingham resided at the same address listed on Howard Bingham's driver's license, on Towne Avenue; (2) the warrant was for some type of grand theft and was issued in 1977, approximately 22 years earlier; (3) the physical description on the warrant differed from that on Bingham's driver's license in that the heights differed by one inch and the weights differed by ten pounds.
 
 
 7
 Once Schreiber obtained this information, he called for backup; Officer Hodgen Crossett reached the scene three to four minutes later. Schreiber confronted Bingham with the information regarding the Andre Bingham warrant. Bingham stated that he was not Andre Bingham and that he did not know anyone named Andre Bingham. In response to Schreiber's question, Bingham informed the officer that his address was the Towne Avenue residence.[2]
 
 
 8
 Bingham and Schreiber agree that Bingham informed the officer that he had just left an event where the President of the United States had been present. Schreiber maintains that Bingham told him that he was on the front page of Sports Illustrated magazine. Bingham recalls not only telling Schreiber that information, but also retrieving a copy of the magazine from the back seat of his car and showing it to Schreiber. The magazine prominently features a picture of Muhammad Ali and Bingham under the headline, "Who's that Guy With Howard Bingham?" and the subtitle "You don't know Muhammad Ali until you know his best friend." Bingham also states that he showed Schreiber a small box with the presidential seal that was a souvenir from the fundraiser for President Clinton that he had just attended. Schreiber denies that Bingham showed him the box.
 
 
 9
 Schreiber arrested Bingham for violating California Vehicle Code § 12500, which prohibits driving an automobile with an expired driver's license. The Vehicle Code also provides that "a peace officer shall not detain or arrest a person solely on the belief that the person is an unlicensed driver, unless the officer has reasonable cause to believe that the person is under the age of 16 years." Cal. Veh.Code § 12801.5(e).[3] Schreiber's deposition testimony is somewhat ambiguous as to whether he arrested Bingham solely for the unlicensed driver violation or also to verify the warrant.[4]
 
 
 10
 Bingham was brought to the Manhattan Beach Police Station, where he was detained for several hours. The booking record identifies the charge only as a violation of California Vehicle Code § 12500 and does not mention the arrest warrant. Due to the age of the outstanding warrant for Andre Bingham, the police were unable to learn more about the details of that warrant in the early morning hours.[5] At 3:40 a.m., Bingham was released because there were "insufficient grounds for making a criminal complaint against" him. The authorities in fact never verified whether Bingham was Andre Bingham. His car, which had been impounded, and his expired license were returned to him. He received no citation for unlicensed driving. The officer on duty at the station credited Bingham's statements that he would go the Department of Motor Vehicles soon after being released to renew his license.
 
 
 11
 Several months later, Bingham filed this action pursuant to 42 U.S. § 1983, alleging that his traffic stop violated the Fourth Amendment because it was an unreasonable seizure; that he was targeted for a traffic stop because of his race, in violation of the Fourteenth Amendment; that his arrest violated the Fourth Amendment; that Officers Schreiber and Crossett conspired to deprive him of his civil rights; and that the City of Manhattan Beach should be held liable for the officers' misdeeds as their supervisor. Following discovery, the defendants moved for summary judgment on all claims on the basis that no question of material fact exists, and on the basis of qualified immunity. The district court granted the motion in part and denied it in part.
 
 
 12
 The court held, regarding Bingham's claims about the traffic stop, that: (1) a genuine issue of fact existed with respect to the reasonableness of the traffic stop; (2) if determined to be unlawful, a traffic stop can be the subject of a § 1983 claim and is not a de minimis constitutional violation; (3) Bingham had not presented a factual question requiring trial regarding his claim that traffic stop was race-based; and (4) qualified immunity was not available to the officers for the traffic stop.
 
 
 13
 With respect to Bingham's claims in connection with his arrest, the district court held that, based on the record, Schreiber could not argue that Bingham was arrested for any reason other than unlicensed driving and that to arrest Bingham for unlicensed driving was unreasonable under the Fourth Amendment because it violated California law. The court, however, applied the "closely related offense" doctrine, under which an officer may be entitled to qualified immunity on the basis of probable cause to arrest the plaintiff for a related offense. It reasoned that, although the felony charged in the Andre Bingham warrant was not closely related to the offense of driving with an expired license, the record established that the warrant was not "an ex post facto extrapolation of a crime designed to justify a sham arrest." The rationale underlying the requirement that the offenses be "closely related" was therefore not at issue. The court further concluded that under clearly-established law, the officers' detention of Bingham to verify the warrant was objectively reasonable.[6]
 
 STANDARD OF REVIEW
 
 14
 We review de novo a district court's decision denying summary judgment on the ground of qualified immunity. Mena v. City of Simi Valley, 226 F.3d 1031, 1036 (9th Cir.2000). In deciding whether Schreiber is entitled as a matter of law to qualified immunity, "we must accept the facts in the light most favorable to [Bingham] and then determine whether, in light of clearly established principles governing the conduct in question, [Schreiber] objectively could have believed that [his] conduct was lawful." Id. The district court's grant of summary judgment on the ground of qualified immunity is also reviewed de novo. Jackson v. City of Bremerton, 268 F.3d 646, 650 (9th Cir.2001). "Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law." Id.
 
 DISCUSSION
 
 15
 The threshold question in deciding a summary judgment motion based on qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Billington v. Smith, 292 F.3d 1177, 1183 (9th Cir.2002). If not, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201, 121 S.Ct. 2151. If, however, a violation could be made out under the facts alleged, the next step is to determine whether the right was clearly established. Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202, 121 S.Ct. 2151. "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208, 121 S.Ct. 2151.
 
 I. The Traffic Stop
 A. Qualified Immunity
 
 16
 We must determine whether, taken in the light most favorable to Bingham, the facts Bingham alleged show that Schreiber's conduct in initiating the traffic stop violated a constitutional right and, if so, whether that right was clearly established. Id. at 201, 121 S.Ct. 2151. Schreiber and Bingham recount starkly different versions of the events preceding the traffic stop. The district court denied Schreiber's motion for summary judgment on this issue on the basis that Bingham had raised a genuine issue of fact as to the reasonableness of the stop.
 
 
 17
 Schreiber testified that he initiated the traffic stop because he saw Bingham's car cross the dividing lines three times. Bingham contended that he was not weaving at all and points out that, if he had been driving in as dangerous a manner as Schreiber alleged, Schreiber should have pulled him over immediately, rather than following him for approximately twenty blocks. Schreiber also testified that he was unable to see Bingham and therefore did not know that Bingham was African-American before stopping him. Bingham contends that Schreiber was able to see him as he drove through the intersection of Rosecrans and Sepulveda Boulevards. Taking the facts in the light most favorable to Bingham, therefore, Bingham alleges that he was driving safely, that Schreiber observed him as he passed through an intersection, and that Schreiber pulled him over after following him for several miles, even though Bingham had broken no traffic rules.
 
 
 18
 Under settled Fourth Amendment law, a traffic stop constitutes a seizure, and an officer must have reasonable suspicion before detaining a motorist. See e.g., Whren v. United States, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (stating that the "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a `seizure' of `persons' within the meaning of [the Fourth Amendment]" and therefore must not be unreasonable); United States v. Colin, 314 F.3d 439, 442 (9th Cir.2002) (stating that an investigatory traffic stop requires reasonable suspicion). If, as Bingham alleges, Schreiber pulled him over without having observed any traffic violation, Schreiber's conduct did violate a constitutional right.
 
 
 19
 Even if the stop is determined to have been initiated in the absence of reasonable suspicion, however, Schreiber contends that he should not be held liable because an unlawful traffic stop, absent any evidence of racial bias, is a de minimis violation of the Fourth Amendment. In short, Schreiber asserts that an unlawful traffic stop, without more, cannot serve as the basis of a § 1983 action.
 
 
 20
 In support of this proposition, Schreiber relies principally on Ford v. Wilson, 90 F.3d 245 (7th Cir.1996). In Ford, the Seventh Circuit observed in dicta that "[t]here are such things as de minimis deprivations of liberty; maybe a routine traffic stop is one of them." Id. at 248 (citation omitted). Schreiber urges us to adopt the Seventh Circuit's view that "[u]nlike an arrest, a routine traffic stop is an ordinary incident of driving." Id. Schreiber contends the courts will be flooded by § 1983 actions if a motorist may bring a § 1983 case every time he disagrees with a police officer regarding the reasonableness of a traffic stop. We decline to follow Schreiber's suggestion.
 
 
 21
 We agree with the district court that an unlawful traffic stop, even if not racially-motivated, may give rise to a § 1983 violation. Schreiber's argument that the de minimis doctrine applies here improperly conflates Fourth Amendment and § 1983 doctrines. Although the Supreme Court has held that some governmental intrusions may be so minor as not to violate the Fourth Amendment at all, see Ingraham v. Wright, 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("There is ... a de minimis level of imposition with which the Constitution is not concerned."), it has never held that actions that do violate the Fourth Amendment may result in such little harm that § 1983 is not an available remedy.
 
 
 22
 It is true that some minimally intrusive searches and seizures may not violate the Fourth Amendment, even if they are not supported by reasonable suspicion. In Pennsylvania v. Mimms, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (per curiam), the Supreme Court held that, where an officer had lawfully initiated a traffic stop, asking the motorist to step out of his car constituted "an additional intrusion [that] can only be described as de minimis." Id. at 111, 98 S.Ct. 330; see also Ruvalcaba v. City of Los Angeles, 64 F.3d 1323, 1327 (9th Cir.1995) (extending Mimms' de minimis doctrine to the requirement that a passenger exit a car at a traffic stop).
 
 
 23
 An unlawful traffic stop, however, is not such a de minimis violation. It is well-settled law that if a police officer pulls over a motorist without reasonable suspicion to do so, that action violates the Fourth Amendment. Colin, 314 F.3d at 442; see also, e.g., Price v. Kramer, 200 F.3d 1237, 1248 (9th Cir.2000) (stating that a vehicle stop without reasonable suspicion is unreasonable under the Fourth Amendment).
 
 
 24
 The issue in Mimms was not whether the Fourth Amendment was violated for purposes of a § 1983 claim but whether evidence discovered as a result of asking a motorist to step out of his car after validly being stopped by police should have been suppressed at trial. Unlike the instant case, the facts were not in dispute. Thus, in Mimms, there was "no question about the propriety of the initial restrictions on [the motorist's] freedom of movement." Mimms, 434 U.S. at 109, 98 S.Ct. 330. Similarly, in Ruvalcaba, we were careful to point out that the plaintiff did not contest the legality of the traffic stop. Ruvalcaba, 64 F.3d at 1326.
 
 
 25
 Under Bingham's version of the facts, which we must accept as true at this stage of the litigation, there was not reasonable suspicion for Schreiber to detain him. Schreiber's conduct therefore violated the Fourth Amendment, satisfying the first prong of the analysis. The next question, therefore, is simply whether the right not to be stopped without reasonable suspicion was clearly established. The district court correctly held that it was.
 
 
 26
 Schreiber contends that the district court failed properly to address the "clearly established" prong. He posits a novel twist to the "clearly established" inquiry, contending that because it is not clearly established that damages may be obtained under § 1983 for an unlawful traffic stop, qualified immunity should apply.
 
 
 27
 This argument misunderstands the second part of the qualified immunity inquiry. The question is whether the constitutional right, not the right to damages under § 1983, is clearly established in law. See, e.g., Katz, 533 U.S. at 201-02, 121 S.Ct. 2151 (describing the second prong as "whether the right was clearly established," meaning "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted"); Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (stating that a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right").
 
 
 28
 The qualified immunity cases are not concerned with whether there exists a body of case law known to the officer regarding whether or what type of damages are available for the violation of a person's constitutional rights. Rather, in determining whether qualified immunity is available, those cases merely inquire whether the right at issue was clearly established in law. It has been settled law since the 1970's that in order for a police officer to initiate an investigatory stop of a motorist, there must at least exist reasonable suspicion that the motorist is engaging in illegal activity. See, e.g., Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979) (requiring "at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law" in order to stop an automobile and detain the driver). Accordingly, we affirm the district court's denial of Schreiber's motion for summary judgment on qualified immunity grounds with respect to the traffic stop.
 
 B. Equal Protection Claim
 
 29
 Bingham contends that Schreiber pulled him over because of his race. The district court granted summary judgment in Schreiber's favor on this claim because, in its view, the record was devoid of any evidence that race motivated Schreiber's stop of Bingham. We affirm.
 
 
 30
 In order to succeed on his equal protection claim, Bingham must prove that Schreiber "acted in a discriminatory manner and that the discrimination was intentional." Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir.2000). Bingham argues that he presented circumstantial evidence giving rise to a question of material fact as to whether he was stopped for discriminatory reasons, and that the district court disregarded the following four facts: (1) Schreiber is white and he is black; (2) Schreiber was able to see Bingham's race when Bingham crossed the intersection of Rosecrans and Sepulveda;[7] (3) the City of Manhattan Beach is predominantly white;[8] and (4) although Schreiber allegedly pulled Bingham over for erratic driving, the officer never issued a citation for that behavior.
 
 
 31
 Essentially, Bingham argues that because he is African-American, the officer is white, and they disagree about the reasonableness of the traffic stop, these circumstances are sufficient to raise an inference of racial discrimination. We disagree that this is sufficient to state an equal protection claim. To avoid summary judgment, Bingham "must `produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that [the] decision ... was racially motivated.'" Keyser v. Sacramento City Unified Sch. Dist., 265 F.3d 741, 754 (9th Cir.2001) (quoting FDIC v. Henderson, 940 F.2d 465, 473 (9th Cir.1991)) (alterations in original); cf. Navarro v. Block, 72 F.3d 712, 716 (9th Cir.1995) (stating that "a long line of Supreme Court cases make clear that the Equal Protection Clause requires proof of discriminatory intent or motive"). Because Bingham has failed to produce any evidence of discriminatory intent, he has not created a genuine issue of fact as to whether Schreiber's actions violated the Equal Protection Clause.[9]
 
 II. The Arrest
 
 32
 Bingham cross-appeals the district court's grant of summary judgment in favor of Schreiber on qualified immunity grounds with respect to the arrest. The district court ruled, first, that, based on the evidence in the record, there was no doubt that Bingham was arrested for the expired license violation, and not for the purpose of verifying the warrant.[10] Because an arrest for this purpose violated California Vehicle Code § 12801.5, which prohibits the arrest of a motorist over the age of 16 "solely on the belief that the person is an unlicensed driver," Cal. Veh. Code § 12801.5(e), and the law was clearly established at the relevant time, the court concluded that qualified immunity was unavailable for this violation. Relying on the closely related offense doctrine, however, the court decided that the arrest was justified because verification of the Andre Bingham warrant constituted a closely related offense for which the police might have lawfully arrested Bingham. Schreiber takes issue with the district court's first two conclusions, and Bingham with the third. We affirm in all respects.
 
 
 33
 First, we agree with the district court that the record establishes that Schreiber arrested Bingham for driving with an expired license, in violation of California Vehicle Code § 12500. Schreiber's deposition testimony does not conclusively indicate that he arrested Bingham for both the unlicensed driver violation and the warrant verification. Although he did name both reasons, when pressed, he testified that he arrested Bingham solely for the unlicensed driver violation. Furthermore, the booking record and the detention certificate both specify only the unlicensed driver violation as the reason for the detention. Cf. Wainwright v. City of New Orleans, 392 U.S. 598, 605-06, 88 S.Ct. 2243, 20 L.Ed.2d 1322 (1968) (Warren, C.J., dissenting from dismissal of writ of certiorari) (stating that "`[b]ooking' is an administrative record of an arrest.... there are obvious and compelling reasons why official records should prevail over the second-guessing of lawyers and judges. Nor would holding the police to official records frustrate any legitimate interest of society."); id. at 606 n. 6, 88 S.Ct. 2243 (stating that "when a controversy arises over the legality of [an] arrest, the police should be held to the booked offense").
 
 
 34
 Second, despite Schreiber's protestations to the contrary, "`[i]n evaluating a custodial arrest executed by state officials, federal courts must determine the reasonableness of the arrest in reference to state law governing the arrest.'" Pierce v. Multnomah County, 76 F.3d 1032, 1038 (9th Cir.1996) (quoting United States v. Mota, 982 F.2d 1384, 1388 (9th Cir.1993)); see also Reed v. Hoy, 909 F.2d 324, 330 n. 5 (9th Cir.1990) (stating, in a § 1983 action, that "[s]tate law is often relevant in analyzing the reasonableness of police activities under the fourth amendment"). California Vehicle Code § 12801.5(e) prohibits arresting someone solely for being an unlicensed driver. Arresting Bingham solely on that basis clearly is not an "`action[] that a reasonable officer could have believed lawful.'"[11] Pierce, 76 F.3d at 1038 (quoting Anderson, 483 U.S. at 646 n. 6, 107 S.Ct. 3034). Qualified immunity is not available on this basis. See id. at 1037. We conclude, however, that qualified immunity is nonetheless available because "a reasonable officer could have believed [Bingham's detention for verification of the warrant] was lawful, in light of clearly established law and the information [Schreiber] possessed." Anderson, 483 U.S. at 641, 107 S.Ct. 3034.
 
 
 35
 "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the `objective legal reasonableness' of the action." Id. at 639, 107 S.Ct. 3034 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Even law enforcement officials who `reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) (per curiam) (quoting Anderson, 483 U.S. at 641, 107 S.Ct. 3034).
 
 
 36
 The district court relied on the closely related offense doctrine to conclude that qualified immunity was available. Under the closely related offense doctrine, probable cause may exist for an arrest "for a closely related offense, even if that offense was not invoked by the arresting officer, as long as it involves the same conduct for which the suspect was arrested." Gasho v. United States, 39 F.3d 1420, 1428 n. 6 (9th Cir.1994). The doctrine
 
 
 37
 represent[s] a carefully constructed "compromise" between two competing concerns. The first, that police officers making warrantless arrests should not be forced to routinely charge every citizen taken into custody with every offense that they thought he could be held for in order to increase the chances that at least one charge would survive the test for probable cause. The second, that police officers should not be allowed to justify what from the outset may have been actually sham or fraudulent arrests on the basis of ex post facto justifications that turn out to be valid.
 
 
 38
 Vance v. Nunnery, 137 F.3d 270, 275 (5th Cir.1998) (citations and internal quotations omitted). As usually applied, the doctrine requires that the crime charged must involve the same conduct as the crime offered as the justification for the arrest. See, e.g., Williams v. Jaglowski, 269 F.3d 778, 783 (7th Cir.2001) (stating that, in order to rely on a closely related charge, "the officers must show that the charge can reasonably be based on the same set of facts that gave rise to the arrest"), cert. denied, 535 U.S. 1018, 122 S.Ct. 1608, 152 L.Ed.2d 622 (2002); Sheehy v. Town of Plymouth, 191 F.3d 15, 19-20 (1st Cir.1999) (describing the doctrine as requiring that the crimes relate to the same conduct and share similar elements); Gasho, 39 F.3d at 1428 n. 6 (stating that probable cause may exist for a closely related offense "as long as it involves the same conduct for which the suspect was arrested"). Because, however, the qualified immunity inquiry focuses on the objective question of whether a reasonable officer could have concluded probable cause existed, see Hunter, 502 U.S. at 227, 112 S.Ct. 534, it has been more generally held that "`an arrest will be upheld if probable cause exists to support arrest for an offense that is not denominated as the reason for the arrest by the arresting officer.'" United States v. Bookhardt, 277 F.3d 558, 564 (D.C.Cir.2002); see also Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir.1994) (concluding that, "[a]s long as the officers had some reasonable basis to believe [the § 1983 plaintiff] had committed a crime, the arrest is justified as being based on probable cause. Probable cause need only exist as to any offense that could be charged under the circumstances.").
 
 
 39
 In Vance, a police detective arrested the § 1983 plaintiff "on the basis of an arrest warrant that he knew was no longer supported by probable or arguable probable cause." Vance, 137 F.3d at 274. The Fifth Circuit held that the detective was not entitled to qualified immunity under the closely related offense doctrine because there was circumstantial evidence that he "may be `indulg[ing] in [an] ex post facto extrapolation[] of all crimes that might have been charged on a given set of facts at the moment of arrest.'" Id. at 276 (quoting United States v. Atkinson, 450 F.2d 835, 838 (5th Cir.1971)). Similarly, in Sheehy, the officer arrested the § 1983 plaintiff on one basis but, at the police station, charged the plaintiff with conduct "that unmistakably did not serve as the basis for the challenged arrest." Sheehy, 191 F.3d at 21. The First Circuit reasoned that "[a]llowing such reliance would `open the door to the extrapolation of offenses in an effort to justify a sham arrest.'" Id. (quoting Biddle v. Martin, 992 F.2d 673, 677 (7th Cir.1993)).
 
 
 40
 By contrast, here, as the district court reasoned,
 
 
 41
 it is undisputed that Schreiber told Bingham about the warrant, asked whether he was Andre Bingham, and questioned him about his address during the traffic stop and prior to the arrest. In addition, Schreiber attempted to verify several pieces of information on the warrant before making the arrest, including Bingham's date of birth and physical description. In light of the fact that Schreiber was thinking about the warrant shortly before the arrest, that he and Crossett discussed the warrant in deciding whether to make an arrest, and that the warrant was a substantial (albeit not the only) motivation for the arrest, the court cannot characterize defendants' present invocation of the warrant as an ex post facto extrapolation of a crime designed to justify a sham arrest.
 
 
 42
 Dist. Ct. Order at 42.
 
 
 43
 As stated earlier, one of the concerns underlying the related offense doctrine is that an officer not attempt to justify a sham arrest on the basis of an ex post facto excuse for the arrest. See, e.g., Vance, 137 F.3d at 275; see also Williams, 269 F.3d at 783 (stating that the justification for the arrest cannot be an "`ex post facto extrapolation[] of all crimes that might have been charged on a given set of facts'") (quoting Richardson v. Bonds, 860 F.2d 1427, 1431 (7th Cir.1988)) (alteration in original); id. at 784 (stating that facts known to the arresting officer at the time of the arrest "reassures us that this justification is not an ex post facto excuse for the arrest"). This concern is not implicated in the present case, where the facts clearly establish that Schreiber was aware of the warrant and was attempting to verify whether Bingham was the subject of the warrant prior to arresting him. The only question, therefore, is whether a reasonable officer would have detained Bingham for verification of the warrant, in light of clearly established law and the information Schreiber possessed. See Anderson, 483 U.S. at 641, 107 S.Ct. 3034. The answer is yes.
 
 
 44
 The warrant was for an Andre Bingham, as opposed to Howard Bingham, at the same address as that listed on Bingham's license, and the only differences in the physical description were a height difference of one inch and a weight difference of ten pounds; the dates of birth differed by two years. Detaining Bingham to verify a warrant whose identifying information matched him so closely is not an objectively unreasonable decision. In Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979), the § 1983 plaintiff was mistakenly arrested on the basis of a valid warrant for his brother, who had "somehow procured a duplicate of [his] driver's license." Id. at 140, 99 S.Ct. 2689. The Court held that his arrest and three-day detention did not violate his due process rights and that he therefore did not have a claim under § 1983. Id. at 144-45, 99 S.Ct. 2689. On a similar note, the Court held in Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), that police "unquestionably had probable cause to arrest" someone who matched the suspect's description and was found in the suspect's apartment, even though he produced identification indicating that he was not, in fact, the suspect. Id. at 802-03, 91 S.Ct. 1106; see also Rodriguez v. Farrell, 280 F.3d 1341, 1346-49 (11th Cir.2002) (holding that a mistaken arrest was reasonable and thus did not constitute a constitutional violation for purposes of a § 1983 claim where the plaintiff shared the same name, sex, age, and race as the fugitive, had a similar Social Security number, lived in a neighboring town, and was born in the same state), cert. denied, ___ U.S. ___, 123 S.Ct. 1482, 155 L.Ed.2d 225 (2003); Blackwell v. Barton, 34 F.3d 298, 303-04 (5th Cir.1994) (holding that an officer reasonably arrested the § 1983 plaintiff, who had the same first name and similar physical characteristics as those listed on the warrant); Brown v. Patterson, 823 F.2d 167, 169 (7th Cir.1987) (holding that an officer reasonably arrested the § 1983 plaintiff, who had the same name and race, but otherwise different identifying information, as was listed on the warrant).
 
 CONCLUSION
 
 45
 The district court correctly denied summary judgment on the basis of qualified immunity with respect to the traffic stop. Moreover, we agree that an unlawful traffic stop is not a de minimis violation of the Fourth Amendment. We also agree that Bingham has not alleged facts sufficient to avoid summary judgment on his Equal Protection claim. Finally, we affirm the district court's grant of summary judgment in favor of Schreiber on the arrest because his arrest of Bingham in order to verify the warrant was reasonable. Each party shall bear his own costs on appeal.
 
 The judgment of the district court is
 
 46
 AFFIRMED.
 
 
 
 Notes:
 
 
 [1]
 We grant deference to the district court's decision to grant Bingham's motion for entry of final judgment under Rule 54(b) and agree with the district court that there is "no just reason for delay." Fed.R.Civ.P. 54(b);see Cadillac Fairview/Cal., Inc. v. United States, 41 F.3d 562, 564 n. 1 (9th Cir.1994) (citing the trend toward greater deference to a district court's decision to grant a Rule 54(b) motion); see also James v. Price Stern Sloan, Inc., 283 F.3d 1064, 1068 n. 6 (9th Cir.2002) (stating that "issuance of a Rule 54(b) order is a fairly routine act that is reversed only in the rarest instances").
 
 
 [2]
 At the time of the incident, Bingham actually resided at a different address. The Towne Avenue home, however, is the home in which Bingham and his six siblings were raised and is where his mother and sister still live. Bingham thus maintains that he still considers it to be his address
 
 
 [3]
 Schreiber does not maintain that he believed that Bingham, who was 61 years old at the time, was under the age of 16
 
 
 [4]
 Schreiber testified, on cross-examination, as follows:
 Q: Am I correct in saying that you arrested him [Bingham] for a violation of section 12500 of the Vehicle Code?
 A: Correct.
 Q: Driving without being properly licensed. Correct?
 A: Yes.
 Q: He was not arrested on the warrant?
 A: He was arrested to see — on the unlicensed driver plus a warrant verification.
 Q: He was not arrested on the warrant? Did you arrest him on the warrant?
 A: No.
 Q: You arrested him for 12500 of the Vehicle Code and nothing else, correct? Just so the record is clear, you arrested him solely for violating California Vehicle Code § 12500(a), correct?
 A: Also the warrant verification.
 Q: Are you arresting him to verify a warrant, or are you arresting him on the warrant, or are you arresting him for 12500(a) of the Vehicle Code? What is it, sir?
 A: For the unlicensed driver.
 Q: That's it? That's what you arrested him for?
 A: Correct.
 Schreiber Dep. at 88-89 (colloquy of counsel omitted).
 
 
 [5]
 It was subsequently determined that the outstanding felony warrant was for William Bingham, plaintiff Bingham's brother, who used the alias Andre Bingham. Within a week after his arrest, Bingham went to the Department of Motor Vehicles, where he learned that his brother had obtained a driver's license in Howard Bingham's name
 
 
 [6]
 The district court also held that there was insufficient evidence in the record to support a supervisorial or municipal liability claim underMonell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), against the City of Manhattan Beach or its chief of police. This ruling is not at issue on this appeal.
 
 
 [7]
 The testimony conflicts on this point. Schreiber contends that he did not know Bingham's race until he approached the car on foot after it was pulled over
 
 
 [8]
 There is no evidence in the record on this point; however, counsel's assertion is supported by census data which show that in the 2000 Census, the race/ethnicity of 89 percent (30,124) of the population of Manhattan Beach was white and 0.6 percent (208) was blackSee http://www.ci.manhattan-beach.ca.us/home/demographic_profile_of_manhattan_beach.html, Table 2 (Source: 2000 Census).
 
 
 [9]
 Bingham quotes extensively from the discussion of racial profiling inWashington v. Lambert, 98 F.3d 1181 (9th Cir.1996). Washington was a Fourth Amendment case and not an Equal Protection case. Furthermore, in that case, in contrast to this one, there existed evidence from which it might have been reasonable to conclude that the officers acted with racial intent. The officers in Washington were acting on a tip that two African-American suspects were on the loose. It might reasonably have been determined that the officers apprehended the African-American plaintiffs principally because of their race, given that they bore little resemblance to the descriptions of the two suspects. Id. at 1183. Bingham puts forward no such evidence here.
 
 
 [10]
 The district court's conclusion that Bingham was arrested on the basis of the expired license, not the warrant, relied on two factors. First, Schreiber's deposition testimony did not clearly establish that he arrested Schreiber for both the unlicensed driver violation and the warrant verification, but rather included statements that Schreiber arrested Bingham solely for the unlicensed driver violation. Second, and more importantly, both the booking record completed when Bingham arrived at the police station and the detention certificate issued upon his release identified the charge only as an unlicensed driver violation of California Vehicle Code § 12500
 
 
 [11]
 Schreiber's citation of California Penal Code § 836(a), which permits an officer to arrest a person upon "probable cause to believe that the person to be arrested has committed a public offense in the officer's presence," is unavailingCf. Cal. ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States, 215 F.3d 1005, 1013 (9th Cir.2000) (stating that "[i]t is fundamental that a general statutory provision may not be used to nullify or to trump a specific provision").
 
 
 
 47
 REINHARDT, Circuit Judge, concurring in part and dissenting in part:
 
 
 48
 I join Part I of the majority opinion, although I offer some additional comments as to Part I.B. As to Part II, I agree with the majority that for purposes of this appeal, we must assume that Officer Schreiber arrested Howard Bingham for driving with an expired license and not in order to verify the outstanding warrant; in such case, the arrest violated clearly established California law. After making those determinations, however, the majority errs by applying the "closely related offense" doctrine to offenses that are wholly unrelated and, by so doing, reaches the erroneous conclusion that the arrest was justified. I, therefore, respectfully dissent as to Part II. I would allow Bingham to proceed to trial on his unreasonable arrest claim as well as on his claim that he was the victim of an unlawful stop.
 
 Equal Protection
 
 49
 I join Part I.B reluctantly. Bingham, a well known and highly respected photographer, asserts that he was stopped because he is African American. He believes that he was stopped solely on account of his race, because in his view "the record provides no other rational reason" for the stop. While Schreiber claims to have stopped Bingham for driving erratically, Bingham asserts that there was nothing irregular about his driving and that he obeyed all traffic laws. He further notes that Schreiber never issued a citation related to the alleged erratic driving. Because we are reviewing a grant of summary judgment, and because Bingham is the nonmoving party, we must view the evidence and draw all reasonable inferences in the light most favorable to him. We must, therefore, accept as true Bingham's assertion that he was not driving erratically, as well as his inference that erratic driving was not the reason for the stop. I do not take the majority to disagree with this analysis.
 
 
 50
 Although we must assume that erratic driving was not the reason for the stop, Bingham does not provide any evidence to show that the real reason was his race. He does not, for example, provide statistics or other evidence to show that the Manhattan Beach Police Department, or Schreiber in particular, had a practice of stopping African Americans; he does not contend that Schreiber made any race-related comment when making the stop; and he does not assert that similarly situated white drivers were not stopped. I am aware that evidence is often difficult or even impossible to produce in racial profiling cases, and its absence here does not prove that Bingham is wrong as to the reason he was stopped. As we have noted, "[i]t is clear ... that African-Americans are stopped by the police in disproportionate numbers." Washington v. Lambert, 98 F.3d 1181, 1182 n. 1 (9th Cir.1996). "Driving while black" did not become a commonplace phrase in our society without good reason. The conclusion Bingham draws is, therefore, understandable. Nevertheless, in the absence of some tangible evidence in the record that tends to support his conclusion, we are compelled by precedent to grant summary judgment to the defendants. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
 
 The Closely Related Offense Doctrine
 
 51
 The majority justifies Bingham's arrest on the basis of the closely related offense doctrine, a doctrine that has nothing to do with the case before us (except to the extent that it precludes my colleagues from adopting the type of new rule that would be required to support their paradoxical ruling.) In the present case, the majority applies the closely related offense doctrine to an event that is not even remotely related to the event for which Bingham was arrested. Candidly, I must state that until the district court decided that an act of driving with an expired license in 1999 is "closely related" to an act of grand theft committed in 1977, no rational person would have thought that the two occurrences could be held closely related. In fact, the only thing the two acts have in common is that they were committed by people with the last name of Bingham.
 
 
 52
 In the only prior reported case in which we addressed the closely related offense doctrine, we held that "[p]robable cause may still exist for a closely related offense, even if that offense was not invoked by the arresting officer, as long as it involves the same conduct for which the suspect was arrested." Gasho v. United States, 39 F.3d 1420, 1428 n. 6 (9th Cir.1994) (emphasis added). That is the identical requirement that other courts that have adopted the rule have announced. See Driebel v. City of Milwaukee, 298 F.3d 622, 644 (7th Cir.2002) ("[T]he officers must show that the charge can reasonably be based on the same set of facts that give rise to the arrest....") (emphasis added); Sheehy v. Town of Plymouth, 191 F.3d 15, 19-20 (1st Cir.1999) ("[T]he crime with which the arrestee is charged and the crime offered to the court as a justification for the arrest must relate to the same conduct.") (emphasis added); Trejo v. Perez, 693 F.2d 482, 486 (5th Cir.1982) (asking "whether the conduct that served as the basis for the charge for which there was no probable cause could, in the eyes of a similarly situated reasonable officer, also have served as the basis for a charge for which there was probable cause"). The majority quotes the Gasho language set forth above and yet holds that under the closely related doctrine an illegal arrest for driving with an expired license may be justified on the basis of a theft committed more than twenty years earlier—that is, on the basis of conduct that is wholly separate in time and wholly different in nature from the conduct for which the arrest was actually made.
 
 
 53
 No case cited by the majority, or any other case of which I am aware, suggests that the closely related offense doctrine can be applied to offenses that are not closely related—and are, indeed, totally unrelated. Williams v. Jaglowski, Richardson v. Bonds, Barna v. City of Perth Amboy, and Hunter v. Bryant, which the majority cites, all involved arrests for offenses arising out of the same conduct as that subsequently used to justify the arrest. See Hunter v. Bryant, 502 U.S. 224, 226-27, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991); Williams v. Jaglowski, 269 F.3d 778, 783-84 (7th Cir.2001); Barna v. City of Perth Amboy, 42 F.3d 809, 819-20 (3d Cir.1994); Richardson v. Bonds, 860 F.2d 1427, 1431 (7th Cir.1988).
 
 
 54
 In addition to contradicting Gasho and the whole line of cases applying the closely related offense doctrine, the holding of the majority is at odds with both the function and purpose of the closely related offense doctrine. The closely related offense doctrine exists in order to avoid requiring law enforcement officers "to be legal scholars." Williams, 269 F.3d at 783. To justify an arrest, an officer must be aware of a particular set of facts that supports probable cause, but need not understand the precise legal significance of those facts. Richardson, 860 F.2d at 1431. Thus, in Gasho, where the defendant was arrested for "unlawful removal" of property in the custody of the United States Customs Service, under 18 U.S.C. § 549, the arrest could alternatively have been justified under 18 U.S.C. § 2233, prohibiting forcible rescue of seized property, or under 18 U.S.C. § 2232, prohibiting removal of property to prevent seizure, because the latter offenses are closely related to "unlawful removal" of Customs property and concern "the same conduct by the arrestee." Gasho, 39 F.3d at 1428 & n. 6. The closely related offense doctrine permits a law enforcement officer to make an arrest for specific conduct that he has probable cause to believe is criminal, even if he is mistaken as to which statutory provision makes such conduct criminal.
 
 
 55
 Allowing an officer to justify an arrest on the basis of conduct other than that for which the defendant was arrested does not in any respect serve this function. In such a case, the officer does not misunderstand the legal significance of the conduct that he correctly recognizes to be unlawful; rather, he arrests the defendant for conduct that does not give rise to probable cause for an arrest. The majority's decision allows officers to make unlawful arrests and then later justify their action by "indulg[ing] in ex post facto extrapolations," Richardson, 860 F.2d at 1431 (internal quotation marks omitted), that is, on the basis of unrelated conduct of which the arresting officer happens to be aware.
 
 
 56
 The majority authorizes precisely such an act of ex post facto justification, despite its assertion that "[t]his concern is not implicated in the present case." Maj. op. at 735. My colleagues maintain that Schreiber's awareness of the outstanding warrant prior to the arrest demonstrates that the ex post facto reliance on the 20-year-old crime is not mere pretext. This is plainly not correct. Awareness of the warrant would, in any circumstance, be a necessary element of probable cause for an arrest on the 1977 theft. That is, the awareness is simply what makes the proffered excuse plausible. It can hardly show that the warrant, or more accurately, the twenty-year-old theft, was the true basis for the arrest—as, indeed, the majority found it was not—and if the earlier conduct was not the basis for the arrest, then it can be nothing other than an excuse or a ex post facto rationalization.
 
 
 57
 In any event, it is simply impossible to fit the facts of this case into the closely related offense doctrine. The offenses in question, and the conduct they arise from, are not close, and they are not related. If the majority wishes to overlook Schreiber's unconstitutional conduct because he was aware of the existence of the warrant at the time of the arrest, it will have to create a new doctrine—the "officer's awareness" doctrine, perhaps—because its opinion, if it is allowed to stand, eliminates the words "closely related" from the closely related offense doctrine, and strips the doctrine of all substance.
 
 
 58
 According to the majority, "[a]s usually applied, the doctrine requires that the crime charged must involve the same conduct as the crime offered as the justification for the arrest." Maj. op. at 734 (emphasis added). In fact, the doctrine, as applied, always requires that the conduct be the same. Implying otherwise, the majority cites two cases, United States v. Bookhardt, 277 F.3d 558, 564 (D.C.Cir.2002) and Barna, neither of which supports the notion that there is any exception to the same-conduct requirement, because neither case applies or purports to apply the closely related offense doctrine.
 
 
 59
 The majority's reliance on Bookhardt is simply in conflict with Ninth Circuit law. The D.C. Circuit, unlike our court, has never adopted the closely related offense doctrine and did not purport to apply it in Bookhardt. Indeed, the rule the D.C. Circuit follows is plainly inconsistent with the closely related offense doctrine. Bookhardt holds that an arrest on an invalid ground is "nonetheless lawful if the same officer had probable cause to arrest the defendant for a different offense"—that is, for any different offense. Id. at 560. The rule of Bookhardt is, in other words, in direct and indisputable conflict with the Ninth Circuit requirement that the offense be closely related. Indeed, the D.C. Circuit's rule permits ex post facto justifications of the sort that, as the majority here recognizes, the closely related offense doctrine prohibits.[1] Thus, the majority in effect overrules the closely related offense doctrine and substitutes the contrary D.C. Circuit rule—the any offense (related or unrelated) doctrine. That it is not free to do given our circuit precedent.
 
 
 60
 The Third Circuit, which decided Barna, has, like the D.C. Circuit, never recognized the closely related offense doctrine. Moreover, Barna does not support the majority's position for the further reason that the officer in that case did not seek to justify an arrest on the basis of conduct other than that for which the arrest was made. See Barna at 819-20. The Barna court, in other words, neither states that it is applying the closely related offense doctrine nor reaches a result that is contrary to the proper — or, as my colleagues put it, "usual" — application of the doctrine.
 
 
 61
 Because I would hold that under the closely related offense doctrine, knowledge of a long-past crime cannot serve as a justification, ex post facto or otherwise, for an arrest for a wholly unrelated current offense, I need not address whether Schreiber could reasonably have arrested Bingham on the theft warrant. I note, however, that I have my doubts on that issue as well.
 
 
 
 Notes:
 
 
 [1]
 Bookhardt is based on a misapplication of Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), which held that an arrest for an offense for which an arresting officer did have probable cause does not violate the Fourth Amendment merely because the officer had ulterior motives in making the arrest. See id. at 808, 813, 116 S.Ct. 1769. That ruling has no bearing on cases in which an arrest is made for conduct that does not provide probable cause for an arrest.